UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| OLEG POTSELUYKO, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 4:18-CV-4010 |
| § | |
| PEOPLE'S TRUST FEDERAL CREDIT § | |
| UNION, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 22). The Court granted in part Defendant's Motion as to Plaintiff's race-based discrimination and hostile work environment claims from the bench at a hearing held on January 29, 2020. (Minute Entry 1/29/2020). The Court took Plaintiff's § 1981 retaliation claim under advisement. After considering the Motion and all applicable law, the Court determines that Defendant's Motion for Summary Judgment must be **GRANTED** in full.

**I.     BACKGROUND**

Plaintiff Oleg Potseluyko began working for Defendant People's Trust Federal Credit Union's Information Technology (IT) department as a Senior Information Systems Technician in March 2014. (Doc. No. 23, at 6). Plaintiff was born in Kiev, Ukraine, immigrated to the United States in 1993, and has since become a naturalized U.S. citizen. *Id.* Plaintiff speaks English with a noticeable Slavic accent. *Id.* Plaintiff identifies as Slavic.[1]

---

[1] Plaintiff, in his deposition and in briefings, alternately refers to his identity as a race and an ethnicity. Defendant does not take issue with this and accepts that Plaintiff's identity falls within the definition of race as protected by § 1981. (Doc. No. 22, at 5 n.1).

Plaintiff alleges that, beginning around December 2015, his coworker, Margarita Vela, began verbally harassing him because of his race. (Doc. No. 1, at 3). Plaintiff names a few specific instances in his briefings and pleadings. First, in December 2015, Ms. Vela commented on Plaintiff's appearance, stating that kids would be scared of his face. *Id.* Then, Plaintiff alleges that Ms. Vela overheard a conversation that Plaintiff was having about firearms and began spreading rumors that Plaintiff was a violent person. *Id.* Plaintiff also cites an incident in which Ms. Vela heard Plaintiff yelling at another coworker and reported Plaintiff. (Doc. No. 23, at 8; Doc. No. 23-5, at 28:14–30:10).

The tension between Plaintiff and Ms. Vela was exacerbated in the summer of 2016, when Defendant changed offices and the IT operations department was condensed into a single room, where all five department members now worked. (Doc. No. 1, at 4). On September 27, 2016, Ms. Vela greeted Plaintiff and, when he did not verbally respond, she repeated her greeting two more times. (Doc. No. 23, at 8). Plaintiff alleges that Ms. Vela invaded his personal space as she repeated the greeting. *Id.* Plaintiff replied, "Cool it." *Id.* at 9. Ms. Vela did not understand what Plaintiff said, noting that she thought he was speaking Russian. *Id.* Ms. Vela reported Plaintiff to HR for "aggressive and disrespectful" behavior, alleging that Plaintiff had raised his voice at her, and then yelled, "Get a dictionary!" (Doc. No. 23, at 9; Doc. No. 23-16). Because of Ms. Vela's report, Plaintiff received a disciplinary coaching from his supervisor, Michael Hoyer, on October 7, 2016. (Doc. No. 23, at 9; Doc. No. 22-8). The Record of Disciplinary Coaching included a performance improvement plan, which noted that Plaintiff would be "monitored closely for the next 90 days." (Doc. No. 22-8, at 1). The Record also stated, "Should your performance and/or behavior become unsatisfactory again based on the above or any other violation of policy, procedure, rule, or law/regulation, this will result in further disciplinary action, up to and including termination." *Id.*

at 2. Plaintiff refused to sign the Record of Disciplinary Coaching. *Id.* Up until this point, Plaintiff had never notified Defendant that he believed he was being discriminated against because of his race.

On October 8, 2016, the day after Plaintiff received the disciplinary coaching, Plaintiff emailed a complaint to Defendant's HR department. (Doc. No. 23, at 10; Doc. No. 23-9). The complaint described all of the previous incidents between Plaintiff and Ms. Vela, complained about Ms. Vela's work performance, and described her as creating a "hostile environment." (Doc. No. 23-9). The letter did not ever mention discrimination, race, or the words "Russian" or "Slavic." *Id.*

Ebony McGowen, an employee in Defendant's HR department, conducted an investigation of the allegations in Plaintiff's complaint. (Doc. No. 23, at 10). Plaintiff alleges that this investigation was insufficient. *Id.* Ms. McGowen scheduled a meeting for October 28, 2016, for Plaintiff and Ms. Vela to "discuss the workplace atmosphere and working together." *Id.* at 12. Mr. Hoyer, Plaintiff's and Ms. Vela's supervisor, was also in attendance. *Id.* According to Mr. Hoyer, Ms. McGowan, and Ms. Vela, Plaintiff became confrontational during the meeting and, although he was asked to stop being aggressive multiple times, he failed to calm down. (Doc. No. 22, at 7). Plaintiff describes his behavior during the meeting as attempts to "defend himself" and challenges to Ms. Vela's report "in his usual direct manner." (Doc. No. 23, at 13). He also notes that he suffers from anxiety-related illnesses and was becoming stressed. *Id.* Plaintiff asked Ms. Vela if she mistreated him because he was Russian.[2] *Id.* at 14. Plaintiff alleges that Ms. McGowan ended the

---

[2] Plaintiff is Ukrainian, not Russian. However, it appears that Ms. Vela thought Plaintiff was Russian.

meeting immediately after he raised the question about his race. *Id.* However, Ms. McGowan stated that she ended the meeting because Plaintiff refused to calm down. (Doc. No. 22, at 7).

After the meeting, Plaintiff was sent home for the rest of the workday. (Doc. No. 23, at 14). On the following Monday, October 31, 2016, Defendant terminated Plaintiff's employment. (Doc. No. 22-15). The stated reason was for violating company policy, based on Plaintiff's rudeness and insubordination during the HR meeting. (Doc. No. 22, at 7).

Plaintiff filed the present suit on October 23, 2018. (Doc. No. 1). Defendant filed its Motion for Summary Judgment on December 2, 2019. (Doc. No. 22). A hearing was held before this Court on Defendant's Motion on January 29, 2020. At that hearing, the Court granted Defendant's Motion in part as to Plaintiff's claims of race-based discrimination and hostile work environment. (Minute Entry 1/29/2020). The Court took Defendant's Motion as to Plaintiff's retaliation claim under advisement. The Court now turns to Plaintiff's retaliation claim.

## II. **LEGAL STANDARD**

On a motion for summary judgment, the movant can succeed only if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006). If the moving party shows there is no genuine issue of material fact, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995).

In asserting that a fact is or cannot be genuinely disputed, parties must cite to materials in the record. FED. R. CIV. P. 56(c)(1). The Court views all evidence in the light most favorable to the

nonmoving party and draws all reasonable inferences in that party's favor. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). However, the nonmoving party cannot thwart summary judgment with "conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Id.*

### III. ANALYSIS

Plaintiff brought three claims for relief under 42 U.S.C. § 1981; only his retaliation claim remains before this Court. Section 1981 prohibits race-based discrimination that impairs individuals' right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. Claims of employment discrimination brought under § 1981 are governed by the same evidentiary framework applicable to employment discrimination claims brought under Title VII. *See, e.g.*, *Decorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

Section 1981 encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). Retaliation claims brought under § 1981, like those brought under Title VII, are governed by the *McDonnell Douglas* burden-shifting framework. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004). Under this three-part analysis, Plaintiff must first establish a prima facie case of discrimination. *Morris v. Town of Indep.*, 827 F.3d 396, 400 (5th Cir. 2016) (citing *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 227 (5th Cir. 2015)). If Plaintiff is successful, then the burden shifts to Defendant to "articulate a legitimate non-discriminatory reason" for termination. *Id.* Defendant's burden is "one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S.

5

502, 509 (1993)). The burden then shifts back to Plaintiff to show that Defendant's proffered reason is pretext for racial discrimination. *Morris*, 827 F.3d at 400 (citing *Davis*, 383 F.3d at 317).

The elements of a prima facie case of retaliation brought under § 1981 track those of a claim brought under Title VII. *See Davis*, 383 F.3d at 319; *see also Mendoza v. Bell Helicopter*, 548 F. App'x 127, 129 (5th Cir. 2013). To establish a prima facie case of retaliation, Plaintiff must show: "(1) [he] engaged in protected activity; (2) an adverse employment action occurred; and (3) a causal link exists between the protected activity and the adverse employment action." *Turner*, 476 F.3d at 348. It is undisputed by the parties that Plaintiff suffered an adverse employment action when he was terminated.[3]

Protected activity includes opposition to unlawful discrimination. Thus, Plaintiff argues that his complaints against Ms. Vela were protected activities. However, "protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010); *see also Turner*, 476 F.3d at 349 (noting email complaint to employer contained "no reference to conduct that could even plausibly be considered discriminatory in nature"). Plaintiff cites three separate complaints that he made to Defendant. First, Plaintiff states that he made complaints about Ms. Vela before the September 27, 2016 "Good Morning" incident to HR, particularly Francisco Sauceda, an HR specialist. (Doc. No. 23, at 25–26). However, Plaintiff never alleges that he expressed to Mr. Sauceda through these complaints that he was experiencing racial discrimination. Mr. Sauceda explicitly stated that Plaintiff never mentioned discrimination in his complaints. (Doc.

---

[3] Plaintiff also seems to argue that his disciplinary coaching, received October 7, 2016, was an adverse employment action. (Doc. No. 23, at 26). However, because Plaintiff's statement at the October 28, 2016 meeting was his only action that could be considered a protected activity, as discussed *infra*, there cannot be a causal connection between a protected activity and Plaintiff's disciplinary coaching. Thus, the Court does not consider here whether Plaintiff's disciplinary coaching was an adverse employment action for the purposes of a retaliation claim.

No. 23-12, at 12:23–25, 16:1–6, 17:7–17). Second, Plaintiff cites his October 8, 2016 written complaint to HR. (Doc. No. 23, at 26). Again, the text of his complaint never mentioned racial discrimination or race. Finally, Plaintiff notes that at the October 28, 2016 meeting, he asked Ms. Vela whether her mistreatment was because he was "Russian." *Id.* This is the only complaint that could be understood to give Defendant notice that Plaintiff was complaining about racial discrimination, and thus, the only complaint that could be considered protected activity.

It is not entirely clear whether Plaintiff's comment towards Ms. Vela constituted sufficient notice to Defendant. On the one hand, Plaintiff clearly raised the issue of race in front of a representative of Defendant's HR department; on the other hand, his accusation was directed at Ms. Vela, at the end of a meeting that had become, by all accounts, tense. However, because Plaintiff's statement did include a reference to race, the Court will assume without deciding that he has given notice of alleged discrimination, and thus, Plaintiff's statement is considered protected activity.

Plaintiff has also proffered enough evidence to establish a causal connection as required under a prima facie case. A plaintiff must establish that his protected activity was a but-for cause of the adverse action by his employer in order to establish a retaliation claim. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). While this is a high bar, under Fifth Circuit law, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007) (quoting *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)). Here, Plaintiff was terminated three days after making his statement about race discrimination, on the next workday. This close timing is enough to provide

the causal connection required to make a prima facie case. Thus, Plaintiff has successfully established a prima facie case of retaliation.

Under *McDonnell Douglas*, the burden then shifts to Defendant to provide a nondiscriminatory reason for the employment decision. Here, Defendant has provided a nondiscriminatory reason for Plaintiff's termination—his rudeness and insubordination during the October 28, 2016 meeting. (Doc. No. 22, at 7). Defendant notes that Plaintiff was still within his ninety-day probationary period, per the terms of his disciplinary coaching, (Doc. No. 22-8, at 1), and that he was asked repeatedly by Ms. McGowan during the meeting to stop being aggressive, (Doc. No. 22, at 7). Thus, Defendant has fulfilled its burden to provide a nondiscriminatory reason for Plaintiff's termination.

Plaintiff therefore must show how Defendant's proffered reason is merely pretextual. Plaintiff has the ultimate burden of demonstrating that Defendant intentionally discriminated against him. *Reeves*, 530 U.S. at 143 (quoting *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)). Plaintiff argues that Defendant failed to investigate properly his previous complaints, lodged before the October 28, 2016 meeting, and instead, wholesale adopted Ms. Vela's accusations as truth. However, such statements do not assert that Defendant's explanation is pretext *for discrimination*. Plaintiff has not provided any evidence for how Defendant's failure to investigate was based in racial animus.

Plaintiff also notes the temporal proximity between when he raised his concerns about race and when he was terminated—a mere three days. (Doc. No. 23, at 27). While temporal proximity may provide the causation element for a prima facie case of retaliation, when refuting Defendant's proffered reason for termination, Plaintiff "must offer some evidence from which the jury may infer that retaliation was the real motive." *McCoy*, 492 F.3d at 562 (quoting *Swanson*, 110 F.3d at

1188). Plaintiff has not provided any such evidence.[4] Temporal proximity alone, then, is not enough to refute Defendant's nondiscriminatory explanation. Thus, Plaintiff has failed to provide evidence that creates a genuine issue as to whether Defendant's explanation for his termination was pretextual. Because Plaintiff has failed to show a genuine issue of material fact, the Court must grant Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's § 1981 retaliation claim, thus granting Defendant's Motion in full.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 30th day of January, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[4] In the portion of his brief discussing his prima facie case, Plaintiff also notes that "Defendant's HR department . . . averred that they terminated [Plaintiff] because he continually challenged the fairness of Ms. McGowan's meeting by complaining that he was subject to discrimination based on his Slavic ethnicity." (Doc. No. 23, at 27). The Court was unable to find evidence in the depositions cited that supports such an assertion. Because Plaintiff has not provided any evidence supporting this statement, the statement cannot be considered supporting evidence on a motion for summary judgment.